IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA BENJAMIN PAULSEN,   )
            )
     Plaintiff,    )
            )
     v.       )  Civil Action No. 24-447
            )
LELAND DUDEK,[1]     )
*Acting Commissioner of Social Security*, )
            )
     Defendant.   )

**O R D E R**

AND NOW, this 27th day of March, 2025, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on July 29, 2024,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8) filed in the above-captioned matter on June 25, 2024,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**  **Background**

Plaintiff Joshua Benjamin Paulsen protectively filed a claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and a claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et*

---

[1] Leland Dudek is substituted as the defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

*seq.*, effective July 6, 2021, claiming that he became disabled on April 30, 2017 due to major depression, ADHD, schizoaffective disorder, anxiety, and autism. (R. 50, 206-22, 294). After being denied initially on November 16, 2021, and upon reconsideration on May 25, 2022, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on November 17, 2022. (R. 50, 137-40, 142-45, 148-51, 153-54, 155, 65-101). In a decision dated March 10, 2023, the ALJ denied Plaintiff's request for benefits. (R. 50-60). On February 23, 2024, the Appeals Council declined to review the decision. (R. 1-3). Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.    <u>Standard of Review</u>

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. §§ 404.1545(a), 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former

occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at §§ 404.1523, 416.923.

### III.    The ALJ's Decision

In her March 10, 2023 decision, the ALJ found that Plaintiff met the insured requirements of the Act through December 31, 2025. (R. 52). She then proceeded to apply the sequential evaluation process, finding that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 30, 2017. (R. 53). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had the severe impairments of PTSD, ADHD, and schizoaffective disorder. (*Id.*). The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three. (R. 53-55).

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> • He can understand, remember, and carry out both written and demonstrated instructions;
> • He can occasionally make work-related decisions;
> • He should not be asked to prioritize tasks;
> • He can have occasional and cursory interactions with co-workers;
> • He cannot interact with the public;
> • He cannot be required to meet a specific production rate such as assembly-line work or hourly quotas;

• He requires work that is self-paced rather than being paced by a machine;
• He requires a stable work environment where the workplace remains generally the same from day to day;
• He cannot travel as a part of the job;
• He cannot do tandem work where fellow employees rely upon his performing a specific task in order to complete the production process;
• He cannot tolerate more than a moderate noise level;
• He requires an opportunity for up to 30 days of training.

(R. 55). In so finding, the ALJ found the opinions of the state agency psychological consultants to be somewhat persuasive but did not include in the RFC their suggestion that Plaintiff was limited to one or two-step tasks. (R. 58). At Steps Four and Five of the process, the ALJ consulted a vocational expert ("VE"), who testified that, based on Plaintiff's age, education, work experience, and RFC, he could perform his past work as a janitor as that position is generally performed and that, alternatively, he could perform other jobs in the national economy, including the representative occupations of laundry worker, marker, and kitchen helper. (R. 90-93). The ALJ accepted this testimony and found that Plaintiff could perform his past relevant work and, alternatively, that he could perform a significant number of jobs in the national economy. Accordingly, she found that Plaintiff was not disabled. (R. 59-60).

## IV.    **Legal Analysis**

Plaintiff raises numerous arguments as to why the ALJ erred in finding him not to be disabled, one of which is that she improperly omitted from the RFC a limitation to one or two-step tasks without sufficient explanation for this omission. Under the circumstances of this case, the Court agrees and will remand on that basis.[2]

As noted, the RFC as formulated by the ALJ contained a number of non-exertional limitations, mostly pertaining to Plaintiff's cognitive and social deficits. Among these were

---

[2]    As such, the Court does not reach the other arguments raised by Plaintiff and takes no position on their merits. To the extent relevant on remand, the ALJ should make sure to address the concerns set forth in those arguments.

restrictions to understanding, remembering, and carrying out both written and demonstrated instructions; to occasionally making work-related decisions, and to not being asked to prioritize tasks. ***Not*** included was any limitation to one or two-step tasks. (R. 55). Plaintiff contends that, given the ALJ's consideration and discussion of the state agency psychological consultants' opinions, the absence of such a limitation, without explanation, requires remand. Given the nature of those opinions and of the ALJ's analysis thereof, the Court agrees.

The ALJ found the opinions of the state agency psychological consultants, Douglas Schiller, Ph.D. (R. 104-07, 111-14) and Melissa Franks, Psy.D. (R. 121-24, 131-34) to be somewhat persuasive. (R. 58). Dr. Franks included in her assessment that Plaintiff "has the mental capacity to manage, understand, and complete simple one or two step tasks." (R. 124, 134). In evaluating the opinions of the state agency psychological consultants, the ALJ stated that "both opined that the claimant was capable of performing non-complex one or two-step tasks despite mild to moderate functional limitations." (R. 58).[3] Given that she found these opinions, as a whole, only somewhat persuasive, the ALJ was not necessarily required to adopt all of the limitations contained therein, including this one. Even if she had found them to be fully persuasive, she would not necessarily have been obligated to do so. *See Wilkinson v. Commissioner Social Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citations omitted) (explaining that "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight"). Indeed, Defendant argues from this point that the ALJ was perfectly justified in declining to include any limitation to one or two-step tasks in the RFC. Under the circumstances present here, this argument is not persuasive.

---

[3]    Despite the ALJ's statement to the contrary, Dr. Schiller actually did not specifically mention any limitation or ability to perform one or two-step tasks.

As discussed, although the ALJ found the opinion of Dr. Franks only somewhat persuasive, she expressly identified that Dr. Franks (and mistakenly Dr. Schiller) had found Plaintiff to be limited to one or two-step tasks.  In regard to this, she further stated, "Although this generally accounts for the claimant's cognitive deficits, neither adequately addressed the claimant's social anxiety or auditory hallucinations."  (R. 58).  This statement demonstrates that Dr. Franks' opinion was persuasive as it related to Plaintiff's cognitive functioning, just not as to his social functioning and hallucinations, which the ALJ found to be more limited than did either Dr. Franks or Dr. Schiller.  Despite seemingly finding the cognitive limitations opined by the state agency psychological consultants, including those set forth by Dr. Franks, to be persuasive, the ALJ neither included the limitation to one or two-step tasks nor explained why she was omitting this restriction from the RFC.  The nature of this analysis makes the absence of any such language in the RFC somewhat confusing.

It may be that the ALJ felt the limitations that she did incorporate into the RFC adequately addressed Dr. Franks' one or two-step task limitation, even though none of the other limitations specifically addressed Plaintiff's ability in regard to the complexity of the instructions he can follow or the tasks he can complete.  Likewise, it may be that the ALJ purposefully found the inclusion of such a limitation to be unwarranted; she did in other parts of her decision indicate that there was limited evidence of Plaintiff's cognitive deficits.  (R. 58).  However, given that the ALJ specifically identified Dr. Franks' opined limitation to one or two-step tasks as a persuasive part of her opinion, as it accounted for Plaintiff's cognitive deficits, at a minimum, some explanation was needed for the Court to understand the nature and basis of the ALJ's decision.  The Court simply cannot tell, without a clearer explanation, whether the ALJ intended to accept or reject this opined limitation.

The significance of this distinction is apparent by looking at the requirements for the jobs the ALJ found Plaintiff capable of performing as set forth in the Dictionary of Occupational Titles ("DOT"). "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *McHerrin v. Astrue*, Civ. No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing S.S.R. 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000)). Among other qualifications, jobs are assigned a General Educational Development ("GED") level, which includes a reasoning level from 1 to 6. Plaintiff's prior job as a janitor that the ALJ found he could perform (DOT No. 381.687-018), as well as the three jobs the ALJ alternatively found Plaintiff could perform – laundry worker (DOT No. 361.684-014), marker (DOT No. 369.687-026), and kitchen helper (DOT No. 318.687-010) – are all positions requiring a GED reasoning level of 2. A reasoning level of 2 requires a "commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations." In contrast, a reasoning level of 1 requires only a "commonsense understanding to carry out simple one or two-step instructions and to deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C, § III. The pertinent reasoning levels differ in large part based on the "length of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length**.**" *Delestienne v. Saul*, Civ. No. 20-1349, 2021 WL 5744684, at 1 n.3 (W.D. Pa. Dec. 2, 2021).

There is no question that a limitation to one-to-two step tasks is compatible with jobs requiring a reasoning level of 1; however, the answer to the question of whether such a limitation necessarily conflicts with a reasoning level of 2 is a somewhat murky one. *Compare Guinn v.*

*Colvin*, No. 14-1416-LPS, 2016 WL 1117395, at *7 (D. Del. Mar. 21, 2016); *Thompson v. Astrue*, No. 07-2989, 2009 WL 7007996, at *12 (E.D. Pa. Jan. 31, 2009) (collecting cases), *adopted by* 2010 WL 4159154 (E.D. Pa. Oct. 22, 2010) (noting "[t]he ALJ's inclusion of the words 'one-to two-step tasks' in [his] RFC limitations did not limit Plaintiff to jobs with a reasoning level of 1" and that "[c]ourts in other districts have held that these words are not inconsistent with a reasoning level of 2") *with Horos v. Kijakazi*, No. 3:21-CV-01803, 2023 WL 2742754, at *4 (M.D. Pa. Mar. 31, 2023) (collecting different cases) (noting that "[c]ourts—including this one—have found that a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2") (emphasis in original).  Courts have remanded where the record fails to demonstrate whether the potential conflict between the restriction to one and two-step tasks and a reasoning level of 2 was addressed by the VE and the ALJ.  *See Vickers v. Comm'r of Soc. Sec.*, Civ. No. 21-1093, 2022 WL 1620076 (W.D. Pa. May 23, 2022); *Harden v. Comm'r of Soc. Sec.*, Civ. No. 13-906, 2014 WL 4792294 (W.D. Pa. Sept. 24, 2014).  At the very least, "the ability to follow simple one or two-step instructions … might trigger concern about [a claimant's] ability to perform jobs that require reasoning level 2." *Virola v. Comm'r of Soc. Sec.*, No. 18-CV-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 21, 2020).

The present record triggers such concerns.  There is a potential conflict with the limitation to one or two-step tasks and the requirements of all four jobs at issue as set forth in the DOT.  As such, the ALJ's failure to explain the omission of any language regarding a limitation to one or two-step tasks, despite seemingly finding this opined limitation to be persuasive in evaluating Dr. Franks' opinion, is highly significant.  Where, as here, there is potentially conflicting evidence in the record, the ALJ must explain which evidence she accepts and rejects

and the reasons for her determination.  *See Cruz v. Commissioner of Soc. Sec.*, 244 Fed. Appx.

475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).  *See*

*also Fargnoli*, 247 F.3d at 42.  The ALJ was not necessarily obligated to accept the limitations

opined by Dr. Franks, but she could not simply disregard them with any explanation.

This Court need not, and does not, make any broad findings as to whether the limitation

to one or two-step instructions necessarily restricts Plaintiff to jobs with a reasoning level of 1.  It

also takes no position as to whether such a limitation should be included in Plaintiff's RFC at all.

Indeed, Dr. Schiller did not suggest this specific limitation, and the ALJ certainly expressed

reservations as to the extent of Plaintiff's cognitive functioning.  However, the Court does agree,

at the very least, that the record presents a potential conflict that must be resolved on remand.

The Court takes no position as to what the ALJ's ultimate conclusion should be; it is the need for

further discussion, that warrants remand here.[4]

## V.    **Conclusion**

The record does not permit the Court to determine whether the ALJ's decision is

supported by substantial evidence, and accordingly, the Court finds that substantial evidence

does not support the ALJ's decision in this case.  The Court hereby remands the case to the

Commissioner for reconsideration consistent with this order.

s/Mark R. Hornak
United States District Judge

ecf:        Counsel of record

---

[4]      Because it is the need for additional explanation by the ALJ that necessitates a remand in this case, the record does not permit the Court to reverse and remand the case for an award of benefits.  *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).